UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| ANTHONY CLAYTON, | ) | CASE NO. 1:15CV1407 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | GEORGE J. LIMBERT |
| | ) | |
| CAROLYN W. COLVIN[1], | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | MEMORANDUM OPINION |
| SECURITY ADMINISTRATION, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |


Plaintiff Anthony Clayton ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") finding that Plaintiff was no longer disabled.  ECF Dkt. #1.  In his brief on the merits, filed on December 7, 2015, Plaintiff claims that the administrative law judge ("ALJ"): (1) failed to provide him a full and fair hearing; and (2) issued a decision that was not supported by substantial evidence.  ECF Dkt. #15.  Defendant filed a response brief on January 6, 2016.  ECF Dkt. #16.  On January 20, 2016, Plaintiff filed a brief in reply.  ECF Dkt. #17.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

**I.      FACTUAL AND PROCEDURAL HISTORY**

On January 18, 2008, Plaintiff was found disabled as of August 13, 2007.  ECF Dkt. #11 ("Tr.") at 17.[2]  On May 25, 2012, it was determined that Plaintiff was no longer disabled as of that date.  *Id.* at 55.  Plaintiff filed a request for reconsideration, which was ultimately denied.  *Id.* at 58-

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled.  This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

77. Following this denial, Plaintiff filed a request for a hearing before an ALJ. *Id.* at 85. Plaintiff appeared and testified before an ALJ on September 26, 2013 without counsel present. *Id.* at 30-47.

On October 17, 2013, the ALJ issued a decision finding that Plaintiff's disability ended on May 25, 2012, and that Plaintiff had not been disabled since that date. Tr. at 11. In the decision, the ALJ indicated that the most recent medical decision finding Plaintiff disabled was the decision dated January 18, 2008, and that this decision was known as the comparison point decision ("CPD"). *Id.* at 18. Continuing, the ALJ stated that at the time of the CPD, Plaintiff had the medically determinable impairment of osteomyelitis of the cervical spine, which was found to meet § 1.08 of 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ then determined that the medical evidence established that, as of May 25, 2012, Plaintiff had the following medically determinable impairments: status-post traumatic injury to the neck; right-side weakness of the upper extremity; back pain; depression; anxiety; and cannabis abuse. *Id.* at 19. Next, the ALJ stated that Plaintiff's impairments as of the date of the decision were the same as his impairments as of May 25, 2012. *Id.* According to the ALJ, since May 25, 2012, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 20.

Regarding Plaintiff's impairments, the ALJ determined that medical improvement had occurred as of May 25, 2012. Tr. at 21. The ALJ found that the medical improvement was related to Plaintiff's ability to work because, as of May 25, 2012, Plaintiff's CPD impairment no longer met or medically equaled the same listing that was met at the time of the CPD. *Id.* Continuing, the ALJ stated that beginning on May 25, 2012, Plaintiff had continued to have a severe impairment or combination of impairments. *Id.* The ALJ determined that beginning on May 25, 2012, based on his impairments, Plaintiff had the residual functional capacity ("RFC") to perform the following: lift or carry twenty pounds occasionally and ten pounds frequently; stand or walk for six hours and sit for six hours in an eight-hour workday; occasionally push and pull with the right upper extremity; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; occasionally reach, including overhead, with the right upper

-2-

extremity; and occasionally handle and finger with the right hand. *Id.* The ALJ also found that Plaintiff must avoid even moderate exposure to hazards. *Id.*

Following the RFC determination, the ALJ indicated that Plaintiff had no past relevant work, was a younger individual as of May 25, 2012, had a limited education and was able to communicate in English, and that the transferability of job skills was not an issue because Plaintiff did not have past relevant work. Tr. at 24. Continuing, the ALJ stated that considering Plaintiff's age, education, work experience, and RFC, Plaintiff was able to perform a significant number of jobs in the national economy as of May 25, 2012. *Id.* Finally, the ALJ concluded that Plaintiff's disability ended on May 25, 2012, and that Plaintiff had not become disabled again since that date. *Id.* at 25.

Plaintiff filed the instant suit seeking review of the ALJ's decision on July 16, 2015. ECF Dkt. #1. In his brief on the merits, Plaintiff presents the following issues for review:

1.  Whether the [ALJ] failed to provide a full and fair hearing where [Plaintiff] was unrepresented, he functions in the borderline range of intelligence, and the [ALJ] asked very little concerning medical issues and asked no questions concerning [Plaintiff's] ability to walk or stand or perform other functional demands of work?

2.  Whether the [ALJ] erred in giving greater weight to the opinion of State agency physicians than Consultative Examiner Feser where the [ALJ] gave great weight to the examination findings of Dr. Feser and these findings are consistent with limitations on walking and standing described by [Plaintiff].

ECF Dkt. #15 at 1. Defendant filed a response brief on January 6, 2016. ECF Dkt. #16. On January 20, 2016, Plaintiff filed a brief in reply. ECF Dkt. #17.

## II.    RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ determined that the medical evidence established that, as of May 25, 2012, Plaintiff had medically determinable impairments, as described above, and that Plaintiff had the same medically determinable impairments as of the date of the decision. Tr. at 19. When discussing this determination, the ALJ first indicated that Plaintiff had established by substantial evidence that his capacity to perform basic work-related functions was somewhat compromised by his physical impairments. *Id.* Continuing, the ALJ stated that Christina Feser, D.O., examined Plaintiff at the request of Disability Determination Services ("DDS") on February 18, 2012, and diagnosed neck pain status-post traumatic injury, right-sided weakness greatest in the upper right extremity, and

-3-

back pain.  *Id.*  The ALJ afforded great weight to the conclusions of Dr. Feser, indicating that the conclusions were supported by objective signs and findings upon examining Plaintiff.  *Id.*  The ALJ then provided examples, stating that Dr. Feser noted that Plaintiff's neurological examination demonstrated diminished sensation of the right upper and lower extremities as well as diminished reflexes of the right upper extremity, and that Plaintiff also exhibited tenderness of the thoratic and lumbar spine.[3]  *Id.*  Continuing, the ALJ indicated that Dr. Feser also noted: slightly diminished strength in the right upper and lower extremities; that Plaintiff was able to perform grasp manipulation, and pinch and fine coordination, requiring increased time and effort in the right hand; decreased range of motion of the cervical and thoracic spine; and normal imaging of the lumber spine.  *Id.*

The ALJ determined that Plaintiff's treatment records confirmed Dr. Feser's analysis.  Tr. at 19.  To support this determination, the ALJ indicated that an evaluating neurologist documented moderate neck movement restriction due to pain in November 2011, and that an examination of Plaintiff's cervical spine by a physical medicine and rehabilitation specialist in December 2011 revealed that there was mild decrement in end range of motion.  *Id.*  Continuing, the ALJ stated that there was "no substantial evidence of any other impairment that is severe."  *Id.*  The ALJ indicated that James Spindler, M.S., examined Plaintiff at the request of DDS on April 26, 2012, and diagnosed depressive disorder, anxiety disorder, and cannabis abuse.  *Id.*  Additionally, the ALJ noted that Mr. Spindler assigned a global assessment of functioning ("GAF") score of sixty-one, which represented some mild symptoms and difficulty in social, occupational, or school functioning, but noted that Plaintiff was generally functioning "pretty well" and had some meaningful interpersonal relationships.  *Id.*  The ALJ stated that Mr. Splindler concluded that Plaintiff was

---

[3]There appears to be a typographical error in the ALJ's decision which reads:

For example, Dr. Feser noted that [Plaintiff's] neurological examination demonstrated diminished sensation of the right and upper lower extremities as well as diminished reflexes of the right upper extremity.

It appears that the ALJ meant to say "right upper and lower extremities."  *See* Tr. at 19.  This reading is consistent with the rest of the ALJ's discussion of Dr. Feser's opinion.  *Id.*

-4-

capable of performing a variety of unskilled labor-type jobs, would be able to maintain a high level of attention and concentration sufficient for most job settings, and that Plaintiff seemed capable of responding appropriately to supervisors and coworkers, and dealing with the routine stressors of competitive employment.  *Id.*

The ALJ indicated that he afforded great weight to the conclusions of Mr. Spindler because they were supported by objective signs and findings upon examination of Plaintiff.  Tr. at 19.  The ALJ provided examples of why he afforded great weight to Mr. Spindler's opinion, namely, that Mr. Spindler noted that Plaintiff: was cooperative; spoke clearly and at a normal rate and volume; had no difficulty staying focused; displayed a normal thought process; appeared mildly depressed and initially nervous, however, he relaxed as the interview progressed; reported a history of cannabis abuse, but that he had not used since 2007; reported that he was dating someone; could go about the community as necessary; had three friends with whom he visited occasionally to go out to eat; helped with chores during the day such as washing dishes and vacuuming; and enjoyed listening to music and tinkering with his computer.  *Id.* at 19-20.

The ALJ also discussed the May 21, 2012 opinion of Mel Zwissler, Ph.D., evaluating Plaintiff's mental condition based on the evidence of record on behalf of DDS without examining Plaintiff.  Tr. at 20.  According to the ALJ, Dr. Zwissler concluded that Plaintiff experienced mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace, and that Plaintiff had not experienced any episodes of decompensation of extended duration.  *Id.* The ALJ noted that Dr. Zwissler's assessment was affirmed upon reconsideration.  *Id.*

Continuing, the ALJ indicated that he afforded great weight to the conclusions of the evaluating sources as they were consistent with the objective and subjective evidence of record.  Tr. at 20.  The ALJ noted that: Mr. Spindler documented only mild limitations during his examination and that Plaintiff reported: the ability to perform significant activities of daily living and significant social functioning; that he had a fiancé; some limitations resulting from his physical impairments in his ability to care for his personal hygiene needs; and some limitations in his ability to pay attention.  *Id.*  As for Plaintiff's report that he experienced some limitations in his ability to pay attention, the ALJ indicated that Plaintiff showed few limitations in his ability to maintain attention

-5-

and concentration during the consultative exam, and also that Plaintiff reported spending time working on his computer. *Id.* The ALJ then determined that Plaintiff had not had an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. *Id.*

Next, the ALJ discussed his finding that medical improvement occurred as of May 25, 2012. Tr. at 20. The ALJ stated that Plaintiff had been involved in a motor vehicle accident in August 2007 during which he suffered a cervical spine fracture and subsequently developed osteomyelitis of the cervical spine in January 2008. *Id.* Continuing, the ALJ noted that upon a follow-up examination in October 2008, Plaintiff reported to his treating physician that his neck pain had essentially resolved. *Id.* The ALJ indicated that Plaintiff reported residual numbness on his right side and complained of decreased sensation and strength, however, his physician noted that decreased strength was not apparent upon testing. *Id.* According to the ALJ, a computerized tomography ("CT") scan of Plaintiff's cervical spine confirmed the absence of any osteolytic process. *Id.* Based on these findings, the ALJ determined that, as of May 25, 2012, there had been a decrease in the medical severity of Plaintiff's disabling impairment present at the time of the CPD. *Id.* at 21.

Then ALJ determined that Plaintiff's medical improvement was related to his ability to work because, as of May 25, 2012, Plaintiff's CPD impairment no longer met or medically equaled the same listing that was met at the time of the CPD. Tr. at 21. In support of this determination, the ALJ noted that: Plaintiff reported to his treating physician in October 2008 that his neck pain had essentially resolved; a CT scan of Plaintiff's cervical spine confirmed the absence of any osteolytic process; and a neurologist evaluated Plaintiff in November 2011 and concluded that there was no evidence of myelopathy or cervical radioculopathy. Based on these findings, the ALJ found that the severity of Plaintiff's impairments no longer met or medically equaled Listing 1.08 as the evidence demonstrated that Plaintiff's major motor function had been restored. *Id.*

The ALJ next discussed Plaintiff's RFC based on his impairments as of May 25, 2012, which consisted of the ability to do the following: lift or carry twenty pounds occasionally and ten pounds frequently; stand or walk for six hours and sit for six hours of and eight-hour workday;

occasionally push and pull with the right upper extremity; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; occasionally reach, including overhead, with the right upper extremity; and occasionally handle and finger with the right hand.  Tr. at 21.  Additionally, the ALJ indicated that Plaintiff must avoid even moderate exposure to hazards.  *Id.*  The ALJ stated that Plaintiff originally alleged that he was still disabled because he could not rotate his head/neck, his balance was off, he could not lift more than twenty pounds, and the right side of his body was heavy and tingling.  *Id.* at 22.  Continuing, the ALJ indicated that at the hearing, Plaintiff testified that: physical therapy helped improve his range of motion; he experienced numbness and tingling in his right side; he was able to lift a number of things around his house, such as an end table; and that he would not want to work at a place like McDonald's because the floor was slippery, but that he could work at Walmart.[4]  *Id.*

After considering the evidence of record, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible because they were somewhat inconsistent with the objective evidence of record and other evidence.  Tr. at 22.  In support of his finding that Plaintiff's statements were not fully credible, the ALJ began by indicating that Plaintiff presented to an emergency department in May 2011 complaining of pain in his back and right shoulder, as well as numbness in his right shoulder.  *Id.*  Continuing, the ALJ stated that Plaintiff was subsequently evaluated by a neurologist in November 2011 for similar complaints, and the neurologist found that Plaintiff's motor strength was full, there were no abnormal movements, tone and bulk were normal, and sensation, coordination, gait, and reflexes were all normal.  *Id.*  The ALJ also noted that Plaintiff exhibited moderate restriction in neck movement due to pain, there was no evidence of myelopathy or cervical radioculopathy, and physical therapy was recommended to improve range of motion.  *Id.*

---

[4]The undersigned recognizes that there is an issue as to whether Plaintiff actually testified that he could work at Walmart, thought that he could work at Walmart, or was willing to try to get a job at Walmart. *See* ECF Dkt. #15 at 13.  This matter is addressed below.

Next, the ALJ indicated that Plaintiff was examined by a physical medicine and rehabilitation specialist in December 2011.  Tr. at 22.  The ALJ stated that upon examination of the cervical spine there was: no tenderness to palpation, including the upper trapezius muscle; mild decrement in end range of motion; normal strength in the upper and lower extremities bilaterally; decreased sensation from C2-5 bilaterally; and normal coordination, gait, and reflexes.  *Id.*  The ALJ noted that physical therapy was again suggested to improve the balance and strength of Plaintiff's neck and shoulder muscles, and that vocational counseling was also recommended.  *Id.*

Continuing, the ALJ indicated that Plaintiff presented to the physical medicine and rehabilitation clinic in December 2011 for increased numbness and tingling in the right side of his body, and that he was referred for a vocational consultation in February 2012.  Tr. at 22.  According to the ALJ, Plaintiff reported feeling constant spine and neck pain, weakness in his legs after walking, decreased grip strength, and that he was unable to turn his neck.  *Id.*  The ALJ next stated that in April 2012, Plaintiff reported to Mr. Spindler that he typically went for a walk around his neighborhood in the evenings.  *Id.*

After indicating that he had considered the medical opinions of record, the ALJ noted that the record did not contain any opinions from treating or examining physicians indicating that Plaintiff was disabled or even had limitations greater than those determined in the decision.  Tr. at 23.  The ALJ stated that given Plaintiff's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on Plaintiff by treating sources, yet a review of the record in this case revealed no restrictions recommended by the treating sources.  *Id.*

Continuing, the ALJ indicated that Dr. Feser concluded that Plaintiff: was mildly limited in his ability to sit; was moderately limited in his ability to stand and walk; could occasionally bend, stoop, crouch, and squat; could occasionally reach, handle, feel, grasp, and finger on the right side; and had decreased visual activity bilaterally without corrections.  Tr. at 23.  The ALJ gave some weight to the conclusions of Dr. Feser because they were generally supported by the objective findings upon examination of Plaintiff.  *Id.*  In support of the assignment of some weight to Dr. Feser's opinion, the ALJ indicated that Dr. Feser opined that: Plaintiff's neurological examination

-8-

demonstrated diminished sensation of the right upper and lower extremities; slightly diminished strength in the right upper and lower extremities; that Plaintiff was able to perform grasp manipulation, and pinch and fine coordination, requiring increased time and effort in the right hand; and decreased range of motion of the cervical and thoracic spine. *Id.* The ALJ noted that Dr. Feser's opinion was consistent with Plaintiff's subjective reports that he could sit for a few hours, stand for fifteen minutes, walk a block, and lift and carry ten pounds frequently and twenty pounds occasionally. *Id.* However, according to the ALJ, Dr. Feser did not provide a clear opinion as to Plaintiff's RFC to sit, stand, walk, lift, and carry because she did not explain what "moderately" meant. *Id.*

Continuing, the ALJ indicated that Leigh Thomas, M.D., evaluated Plaintiff's mental condition based on the evidence of record without examining Plaintiff on behalf of the DDS on March 25, 2012. Tr. at 23. The ALJ stated the Dr. Thomas concluded that Plaintiff was capable of: light work with occasional pushing/pulling with the right upper extremity; frequently climbing ramps or stairs; occasionally balancing, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes, or scaffolds; and occasional reaching, handling, fingering, and feeling with the right upper extremity. Additionally, the ALJ noted that Dr. Feser opined that Plaintiff must avoid even moderate exposure to unprotected heights, dangerous machinery, and commercial driving. *Id.*

The ALJ afforded great weight to the conclusions of the evaluating sources because they were consistent with the weight of the objective and subjective evidence of record. Tr. at 23. According to the ALJ, on a number of occasions, Plaintiff indicated that he was able to lift up to twenty pounds, or a similar weight, however, treatment records continuously documented residual pain and weakness due to his cervical spine injury. *Id.* Therefore, the ALJ limited Plaintiff to light exertional work, with the limitations described above in the RFC determination.[5]

Following this discussion, the ALJ determined that Plaintiff had no past relevant work, was a younger individual as of May 25, 2012, had a limited education and was able to communicate in English, and that the transferability of job skills was not an issue because Plaintiff did not have past

---

[5]*See supra* at 3.

relevant work.  Tr. at 24.  Continuing, the ALJ stated that considering Plaintiff's age, education, work experience, and RFC, Plaintiff had been able to perform a significant number of jobs in the national economy as of May 25, 2012.  *Id.*  Finally, the ALJ concluded that Plaintiff's disability ended on May 25, 2012, and that Plaintiff had not become disabled again since that date.  *Id.* at 25.

### III.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits.  These steps are:

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see*  20 C.F.R.  § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings

-10-

of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found the plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra* (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (internal citations omitted)).

## V.     LAW AND ANALYSIS

### A.     Full and Fair Hearing

The Sixth Circuit has made it clear that an ALJ has a special, heightened duty to develop the record when the claimant is: (1) without counsel; (2) incapable of presenting an effective case; and (3) unfamiliar with hearing procedures. *Wilson v. Comm'r of Soc. Sec.*, 280 F.Appx. 456, 459 (6th Cir. 2008) (citing *Lashley v. Sec. of HHS*, 708 F.2d 1048 (6th Cir. 1983)). Absent such circumstances, the claimant bears the ultimate burden of proving disability. *Wilson*, 280 F.Appx. at 459 (citing *Trandafir v. Comm'r of Soc. Sec.*, 58 F.Appx. 113, 115 (6th Cir. 2003)). To satisfy this heightened duty, the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. *Lashley*, 708 F.2d at 1052. The ALJ must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.*

Plaintiff asserts that he agreed to go forward with the hearing without a representative, however, the ALJ failed to provide a full and fair hearing. ECF Dkt. #15 at 11. Plaintiff alleges that

the hearing transcript reveals significant defects including the ALJ's failure to: solicit testimony from Plaintiff concerning his ability to walk and stand; spend more than five minutes questioning Plaintiff about his medical problems; ask more than general questions regarding Plaintiff's limited cognitive functioning; and ask questions concerning Plaintiff's functional limitations or daily activities. *Id.* at 12.  Additionally, Plaintiff avers that the ALJ's claim that he testified that he could work at Walmart is based on a misinterpretation of his testimony. *Id.* at 13.  Based on these arguments, Plaintiff asserts that the ALJ failed to scrupulously and conscientiously inquire into all relevant facts during the hearing. *Id.*

Defendant contends that Plaintiff received a full and fair hearing. ECF Dkt. #16 at 10.  First, Defendant asserts that the ALJ asked Plaintiff if he received notice outlining his right to representation, and Plaintiff acknowledged receipt and expressed an understanding of his rights. *Id.* at 11.  Continuing, Defendant avers that the ALJ asked Plaintiff if he wished to proceed without representation, to which Plaintiff provided a detailed response stating that he had attempted to obtain counsel but was told that counsel was unavailable because he was receiving benefits. *Id.*  Defendant indicates that the ALJ then offered Plaintiff the opportunity to continue to try to obtain counsel or proceed with the hearing, and that Plaintiff stated that he wished to proceed and signed a waiver. *Id.*  Defendant asserts that Plaintiff knowingly waived his right to representation and the ALJ had no reason to deny his right to proceed to a hearing.  Next, Defendant claims that, in any event, the ALJ fully and fairly developed the record and Plaintiff was not prejudiced by his lack of an attorney. *Id.*  Defendant contends that the record does not support a finding the Plaintiff was incapable of presenting his case despite Mr. Spindler's notation that Plaintiff appeared to be functioning in the borderline range of intelligence. *Id.* at 11-12.  Further, Defendant states that Mr. Spindler also assessed Plaintiff to have "an adequate level of knowledge for most aspects of daily living" and judgment that was adequate for most routine matters. *Id.* at 12.  Additionally, Defendant asserts that the ALJ fully explained each aspect of the hearing and provided Plaintiff with several opportunities to discuss "other problems" or issues. *Id.*  Finally, Defendant states that although Plaintiff alleges that the ALJ did not solicit testimony about his ability to walk or stand, or inquire into his functional abilities or daily activities, the record before the ALJ contained acceptable medical evidence

-12-

regarding Plaintiff's functional abilities. *Id.* Based on the above arguments, Defendant avers that Plaintiff was given an adequate hearing and was not adversely affected by his lack of representation. *Id.*

Plaintiff first provides arguments as to why the special, heightened duty, as described in *Wilson,* applied in this case in his reply brief, having focused on the alleged significant deficits in the hearing in his brief on the merits.[6] *See* ECF Dkt. #15 at 11-13; ECF Dkt. #17. In his reply brief, Plaintiff asserts that Mr. Spindler noted that Plaintiff functioned in the borderline range of intelligence, and that Mr. Spindler's assessment that Plaintiff had adequate knowledge for daily activities and could handle most routine matters "says nothing about his ability to handle the complex legal issues involved in a continuing disability review." ECF Dkt. #17 at 2. Plaintiff indicates that he dropped out of school in the seventh grade and has been unable to obtain a GED because there are things on it that he could not understand. *Id.* Plaintiff also asserts that he was unfamiliar with hearing procedures and did not know what other information would be useful in the assessment of his case, and this only confirms that he was not capable of presenting an effective case. *Id.* at 4. Further, Plaintiff asserts that he was not advised that he could question the vocational expert ("VE") and was not explained the VE's role at the hearing. *Id.* Finally, Plaintiff claims that he is "more similar to the plaintiff in *Lashley,*" rather than *Wilson*, and that the Court should find that the ALJ failed to meet his duty to scrupulously and conscientiously probe into, inquire of, and explore all the relevant fact. *Id.* at 5.

Plaintiff's arguments fail. Beginning with a discussion of whether the ALJ had a special, heightened duty to develop the record, both parties are in agreement that Plaintiff appeared without counsel, and thus the first element of *Wilson* is satisfied. The second and third elements of *Wilson* require deeper analysis than the first, and a discussion of *Lashley* and *Wilson* is necessary. In *Lashley*, the Sixth Circuit stated that there is no bright line test for determining when the ALJ has assumed the role of counsel or failed to fully develop the record, and the

---

[6]Plaintiff's arguments regarding whether the ALJ was under a special, heightened duty were in reply to arguments made in Defendant's response brief, and thus will not be considered arguments improperly presented for the first time upon reply.

determination in each case must be made on a case by case basis.  *Lashley*, 708 F.2d at 1052.
The claimant in *Lashley* was a seventy-nine year old with a fifth grade education who, after
suffering two strokes, possessed limited intelligence, was inarticulate, and appeared to be easily
confused.  *Id.* at 1049-52.  Further, the ALJ in *Lashley* questioned the claimant for twenty-five
minutes, producing a transcript of eleven pages, and questioned the inarticulate claimant in a
superficial manner likely to elicit responses failing to portray accurately the extent of the
claimant's limitations.  *Id.* at 1052-53.  For example, the ALJ pursued the following line of
questioning:

> Q:      What do you do in the yard?
>
> A:      I try to mow the yard.
>
> Q:      Do you use a riding mower or push mower?
>
> A:      I tried to use a riding mower but it hurts my head worser than the push
>         mower.
>
> Q:      You usually use the push mower?
>
> A:      Yes, sir.

*Id.* at 1052.  The inference the ALJ drew from this testimony was that the claimant was "a
vigorous man who prefers a push mower to a power mower."  *Id.*  The Sixth Circuit determined
that this inference was unfounded and that more probing questions would have provided more
accurate information concerning the claimant's physical limitations.  *Id.*  In light of the manner
in which the ALJ conducted the hearing, the Sixth Circuit determined that the ALJ had failed to
provide the claimant a full and fair hearing.  *Id.* at 1052.

In *Wilson*, the Sixth Circuit made it clear that an ALJ has a special, heightened duty to
develop the record when the claimant is: (1) without counsel; (2) incapable of presenting an
effective case; and (3) unfamiliar with hearing procedures.  *Wilson*, 280 F.Appx. at 459.  After
providing these three elements for consideration, the Sixth Circuit determined that although the
claimant chose to proceed without counsel, "the hearing transcript discloses her grasp of the
proceedings and the adequacy of her case presentation to the ALJ."  Courts in this District have
considered the *Wilson* factors and the transcript of the hearing holistically when determining

-14-

whether an ALJ provided a claimant a full and fair hearing.  As such, the undersigned will do the same.

In *Arnwine v. Comm'r of Soc. Sec.*, No. 1:12CV1483, 2013 WL 3365137 (N.D. Ohio July 3, 2013), this Court determined that the ALJ did not fail in her duty to develop the record when Plaintiff was unrepresented at the hearing.  In making this determination, the Court noted that the ALJ informed the claimant of her right to representation, instructed the claimant to notify her if a question was not understood, and then proceeded to question the claimant about her daily activities, part-time job, symptoms, workplace accident, treatment, worker's compensation claim, physical limitations and abilities, a car trip to Alabama, and her employment compensation.  *Id.* at *13.  The Court also considered that the hearing lasted almost an hour and the claimant provided appropriate responses to the ALJ's questions, suggesting that she understood the questions.  *Id.*  Further, the claimant in *Arnwine* had a high school education, and could read and write.  *Id.*

The Court also determined that the ALJ satisfied his duty to fully develop the record in *Taylor v. Colvin*, No. 1:13CV222, 2013 WL 6162527 (N.D. Ohio Nov. 22, 2013).  In *Taylor*, the Court found that the transcript indicated that the ALJ asked the claimant numerous questions about her disability, daily activities, attempts to find work, living arrangements, education, and social functioning.  *Id.* at *9.  The Court also indicated that the ALJ asked open-ended questions and followed up with more detailed questions seeking clarification and explanation of the claimant's answers, asked the claimant whether she had anything to add at the conclusion of the hearing, and stated that the record would be held open for two weeks to give the claimant the opportunity to submit anything she felt the ALJ should consider in the decision.  *Id.*  Further, the ALJ sought additional opinions regarding the nature and scope of the claimant's mental impairments and functional limitations, apparently for the precise purpose of developing the medical record.  *Id.*  The Court also noted that the record indicated that the claimant had limited intellectual functioning, but that the claimant did not cite to any particular testimony suggesting that she did not understand the questions asked by the ALJ, was unable to form coherent responses, or was incapable of submitting supplementary information after the conclusion of the

-15-

hearing.  *Id.* at *10.  Additionally, the Court found that the fact that the hearing was only thirty-five minutes and generated only eight pages of testimony was not necessarily demonstrative of whether the ALJ fully and fairly developed the record.  *Id.* (citing *Ortiz v. Comm'r of Soc. Sec.*, No. 1:09-CV-0700, 2010 WL 2927179 (N.D. Ohio July 6, 2010)).

Recently, in *Erkkila v. Comm'r of Soc. Sec.*, No. 1:15CV2162, 2016 WL4176945, at *7-9 (N.D. Ohio Aug. 8, 2016), this Court found that the claimant had not received a full and fair hearing when the ALJ: had a limited record before him; acknowledged that he had a limited record before him and complained that the record made it difficult, indeed, "impossible to determine the full extent of [the claimant's] symptoms and limitations"; knew or should have known that the claimant had a long-term treating psychiatrist whom she saw regularly whose treatment notes were missing from the record; knew that the claimant did not view the exhibits on the CD prior to the hearing and was unrepresented at the time; and, after being given an incomplete an unsatisfactory answer to a question at the hearing, did not probe further and then complained in his decision that he did not get a satisfactory answer.  Based on these errors, the Court found that the ALJ failed to fully develop the record and reversed the decision.  *Id.* at *9.

In the instant case, the ALJ did not fail to provide Plaintiff with a full and fair hearing.  The hearing transcript demonstrates that the ALJ asked Plaintiff whether he had received the notice outlining his rights to representation, and Plaintiff indicated that he understood his rights and that he wished to proceed with the hearing, even after the ALJ offered him a continuance to obtain representation.[7]  Tr. at 32-33.  The ALJ then explained the hearing proceeding to Plaintiff and the requirements for disability under the Social Security Act, during which Plaintiff repeatedly affirmed that he understood the proceeding and the requirements to be found disabled.  *Id.* at 33-35.  The ALJ then began questioning Plaintiff, instructing him to ask that a question be

---

[7]The undersigned recognizes that Plaintiff indicated that he understood his right "to his knowledge." Despite this language being somewhat ambiguous, Plaintiff's discussion with the ALJ during which he stated that he wished to continue without representation strongly suggests that Plaintiff did understand his right to have an attorney present and waived that right.  Moreover, Plaintiff does not assert that he did not knowingly and voluntarily waive his right to be represented by counsel at the hearing.  *See* Tr. at 32-33; ECF Dkt. #13; ECF Dkt. #17.

repeated if that question was not understood.  *Id.* at 35.  Continuing, the ALJ questioned Plaintiff about his education and home life.  *Id.* at 36-38.

The ALJ then asked Plaintiff about his impairment.  *Id.* at 38-40.  During this line of questioning, the ALJ asked open-ended questions and followed up with more detailed questions seeking clarification and explanation of Plaintiff's answers.  For example:

> A:    And I'm getting back up to be able to lift things.  Well, like right now I lift things and it hurts my – puts strain on my spine a little bit and pulls to my neck.
>
> Q:    Is that with either side or are you talking about your right side?
>
> A:    Just, just with the right side.
>
> Q:    Okay.  How much do you lift when you're, when you're trying that out?
>
> A:    I haven't just lift – I like – probably like those stuff in my house like a end table or something, try to lift up the end table and move it or something.
>
> Q:    And that gives you some pain in your –
>
> A:    In my spine and my neck.
>
> Q:    All right.  Do you drop the table then or do you have to do or do you just kind of power through it?
>
> A:    When I first – no, I can't power through it.  I let go of it the first time, but I can scoot it, I push, I push –
>
> Q:    Yeah.
>
> A:    – push move a lot of things.
>
> Q:    Okay. So are you still seeing a doctor for this?
>
> A:    Yes.  At first I was – it was like a family issue with me and like where I wasn't all the way mental stable to take care of the things I had to take care of when I was living with this girl and the car – when the car accident occurred, and things didn't work out between us.  I lost a lot of paperwork and got took advantage of in that process.  So, like I don't even –
>
> Q.    Okay.  All right.

Tr. at 39-40.  The ALJ also asked Plaintiff about his previous employment, employment related skills, and potential future employment at McDonald's or Walmart.  Tr. at 41-42.  Finally, at the close of the hearing, the ALJ asked Plaintiff if there was anything else that he wished to say before concluding, and gave Plaintiff an opportunity to speak.  Tr. at 45-46.

-17-

The Court recognizes that Plaintiff has a seventh grade education, however, it appears that he discontinued his education after being expelled from school due to fighting, rather than an inability to understand the material. Tr. at 36-37. Moreover, a review of the hearing transcript demonstrates that Plaintiff understood the ALJ's questions and responded accordingly with coherent answers and Plaintiff does not point out any portions of the hearing testimony suggesting that he did not understand the questions or was unable to form coherent responses. *Id.* at 36-42; *see Taylor*, 2013 WL 6162527 at *9. While the hearing was short, lasting only twenty minutes and amounting to transcript consisting of approximately fifteen pages, the length of the hearing is not necessarily demonstrative of whether the ALJ fully and fairly developed the record. *See id.* at *10. This Court has held:

> An ALJs duty to develop the record is not measured by the length of the hearing or the number of questions interposed. Hearings should last no longer than necessary and, ideally, questions should be designed to elicit only necessary information. [The claimant] has not suggested nor has the [Court] determined that more detailed questioning or a longer hearing would have yielded information pertinent to the ALJ's disability determination.

*Ortiz*, 2010 WL 2927179 at *7. Here, the ALJ adequately questioned Plaintiff about his neck fracture to elicit the information necessary to make a decision regarding Plaintiff's disability status.

Indeed, the hearing conducted by the ALJ in the instant case is more akin to *Arnwine* and *Taylor*, the above cited cases where the Court determined that the ALJ did not deprive the claimants of full and fair hearings. In the instant case, the ALJ explained the proceedings, offered to restate questions if they were misunderstood and questioned Plaintiff about his legal representation, education and personal life, impairments, and employment capabilities. Tr. at 32-42. Further, the ALJ provided Plaintiff an opportunity to speak freely about any other issues he though were relevant at the end of the hearing. *Id.* at 45-46. The conduct of the ALJ in this case was unlike the conduct of the ALJ in *Erkkila*, which the Court determined deprived Plaintiff of a full and fair hearing. In *Erkkila*, the ALJ stated that the record made it impossible to determine the full extent of the claimant's symptoms and limitations, failed to expand the record through questioning and seeking medical records that were clearly missing, and then

-18-

issued an unfavorable decision despite these glaring inconsistencies.  No such inconsistencies exist in the instant case.

Plaintiff's arguments that the ALJ should be held to a special, heightened level of scrutiny, contained in his reply brief, as well as Defendant's arguments that the ALJ should not be held to a special, heightened level of scrutiny need not be addressed specifically as the Court has performed the above analysis such as the ALJ was under a special, heightened duty to develop the record.  As for Plaintiff's arguments that the hearing transcript reveals significant deficits concerning his ability to stand and walk, medical problems, limited cognitive functioning, and functional limitations and daily activities, Plaintiff wholly fails to provide any indication of what detailed information pertinent to the ALJ's disability determination would have been yielded from questioning as to these alleged deficits.  *See Ortiz*, 2010 WL 2927179 at *7.  Rather, Plaintiff improperly relies on the conclusory statement that the ALJ "simply failed to make adequate inquiry to provide a fair and full hearing to [Plaintiff]."  ECF Dkt. #15 at 12.

Plaintiff also argues that the ALJ improperly stated that Plaintiff testified that he could work at Walmart because his "thought" that he could work at Walmart said nothing as to whether Plaintiff could work there full-time.  The basis for Plaintiff's argument is unclear as the ALJ did not indicate that Plaintiff testified that he could work at Walmart full-time.  *See* Tr. at 22.  Further, Plaintiff appears to argue that Plaintiff's testimony suggests that he would have no problem trying to work at Walmart, not that he could work there.  ECF Dkt. #15.  As Plaintiff made his statement in response to a question posed by the ALJ asking him whether he thought he could work at Walmart, it is clear that Plaintiff was indicating that he thought he could work at Walmart.  Moreover, in his decision the ALJ stated:

> The claimant also testified that he would not want to work at a place like McDonald's because the floor was too slippery, however he could work at Walmart.

Tr. at 22.  It is clear that the ALJ is referring to Plaintiff's own assessment of his abilities, and that Plaintiff assessed his abilities to be such that he could perform work at Walmart.  Accordingly, Plaintiff's argument as to the portion of the ALJ's decision stating that Plaintiff testified that he worked at Walmart is without merit.  For these reasons, the Court finds that

-19-

Plaintiff received a full and fair hearing and that Plaintiff's arguments to the contrary are without merit.

### B.      Substantial Evidence

Plaintiff next asserts:

> The [ALJ] erred in giving greater weight to the opinion of State agency physicians than Consultative Examiner Feser where the [ALJ] gave great weight to the examination findings of Dr. Feser and these findings are consistent with limitations on walking and standing described by [Plaintiff].

ECF Dkt. #15 at 14.  Plaintiff claims that the ALJ did not appear to question that he was moderately limited in his ability to walk and stand, stating that the ALJ "simply did not know what a moderate limitation looked like."  *Id.* at 16.  To support this assertion, Plaintiff claims that the state agency physicians "clearly understood a moderate limitation to be more limited than an ability to walk/stand for up to six hours."  *Id.*  The single page of the record that Plaintiff cites in support his representation of the state agency physicians' opinion says nothing about the definition of "moderate" or the amount of time that Plaintiff could stand or walk.

Plaintiff next argues that the ALJ did not question Plaintiff about his ability to stand and walk at the hearing.  ECF Dkt. #15 at 16.  Continuing, Plaintiff asserts that he reported to Dr. Feser that he could stand for fifteen minutes and walk one block at a time, yet the ALJ gave no indication that he considered whether such limitations were consistent with the moderate limitations on standing and walking identified by Dr. Feser.  *Id.*  Plaintiff is simply wrong.  The ALJ recognized that Plaintiff made this report to Dr. Feser regarding his ability to stand and walk when suggesting that Dr. Feser's conclusion were generally consistent with Plaintiff's subjective reports, and then immediately indicated that Dr. Feser did not give a clear opinion as to Plaintiff's RFC to stand and walk because she did not explain what "moderately" meant.  Tr. at 23.  It is clear that the ALJ recognized Plaintiff's subjective complaints regarding his ability to stand and walk in consideration of Dr. Feser's opinion.

Next, Plaintiff states:

> Indeed, the decision does not appear to consider whether [Plaintiff's] objectively documented condition could reasonably cause the limitation on walking and standing that he reported to Dr. Feser.  This was critical to a disability analysis.

ECF Dkt. #15 at 16.  Continuing, Plaintiff asserts that where symptoms such as pain and weakness, not the underlying condition, form the basis of the disability claim, the ALJ must ask the claimant whether there is an underlying medically determinable physical impairment that could be reasonably expected to produce the symptoms, and then, if the ALJ finds such an impairment exists, evaluate the intensity, persistence, and limiting effects of the individual's ability to perform basic work activities.  *Id.* at 16-17.  Plaintiff then asserts that the ALJ erred by failing to question Plaintiff about his ability to stand and walk.  *Id.* at 17.

Throughout his arguments as to the ALJ failure to consider his ability to stand and walk, the only piece of medical evidence cited by Plaintiff is Dr. Feser's opinion that Plaintiff had moderate limitations in his ability to stand and walk.  *See* ECF Dkt. #15 at 14-17.  The ALJ determined that Dr. Feser's opinion was unclear because she failed to expand on what "moderately" meant regarding Plaintiff's ability to stand and walk.  Tr. at 23.  Plaintiff also relies on his own subjective statements regarding his ability to walk, however, the ALJ was under no obligation to accept his subjective complaints and was free to consider Plaintiff's credibility when making a determination of disability.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6ᵗʰ Cir. 2003).  The ALJ properly discounted Dr. Feser's opinion as vague  and Plaintiff's subjective complaints as they were not supported by the record as a whole.

The ALJ provided a lengthy, thorough recitation of the medical evidence in his decision.  *See* Tr. at 19-24.  In his decision, the ALJ stated:

> The undersigned has considered the medical opinion of record in rendering this decision. Notably, the record does not contain any opinions from treating or examining physician [sic] indicating that [Plaintiff] is disabled or even has limitations greater that those determined in this decision.

Tr. at 23.  Plaintiff's entire argument is based upon a single piece of medical evidence prepared by Dr. Feser that appears to have been based largely on Plaintiff's subjective complaints, a fact recognized by the ALJ.[8]  Tr at 23; *see* Tr. at 236-40.  Moreover, the overwhelming majority of

---

[8]The only mention of any limitations on standing or walking made by Dr. Feser in her report prior to the impression that Plaintiff had moderate limitations with standing and walking were statements made by Plaintiff regarding his own functional limitations.  *See* Tr. at 236-40.  This strongly suggests that Dr. Feser's opinion was based on Plaintiff's subjective complaints.

the medical evidence does not place limitations on Plaintiff's ability to stand and walk that are more restrictive than the limitations imposed in the RFC finding.  Plaintiff is essentially asking that the Court reverse the decision of the ALJ based on a single piece of medical evidence prepared largely upon Plaintiff's subjective complaints.  In light of the near total lack of medical evidence that Plaintiff had standing and walking limitations greater than those imposed by the ALJ's RFC determination, and the fact that the ALJ's decision as to Plaintiff RFC reflects the overwhelming majority of the medical evidence, the Court finds that the ALJ's decision was supported by substantial evidence.

**VI.**    **CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.


Date: September 12, 2016                              */s/George J. Limbert*
                                                 GEORGE J. LIMBERT
                                                 UNITED STATES MAGISTRATE JUDGE